UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

ALPHA DEVELOPMENT GROUP L L C ET AL : CASE NO. 2:21-CV-00991

VERSUS : JUDGE JAMES D. CAIN, JR.

LIBERTY MUTUAL INSURANCE CO : MAGISTRATE JUDGE KAY

### MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 27] filed by defendant Ohio Security Insurance Company ("Ohio Security") seeking dismissal of plaintiff Alpha Development Group LLC ("Alpha") and Mike Reese's claims on the grounds that it has voided the insurance policy at issue by violating the concealment, representation, or fraud condition therein. Plaintiffs oppose the motion. Doc. 32.

### I.
### BACKGROUND

This suit arises from damage inflicted by Hurricane Laura and Hurricane Delta, which made landfall in Southwest Louisiana on, respectively, August 27 and October 9, 2020, as well as a tornado that struck the same area in October 2021. These weather events allegedly caused damage to a 48,000 square foot storage warehouse ("the property") owned by Alpha, of which Mike Reese is the managing member,[1] and located at 2925 Industrial Avenue, Lake Charles, Louisiana, 70615. Doc. 27, att. 2, p. 14; doc. 32, att. 6, p. 9. Since

---

[1] The other two members of Alpha are Pat Williams and Alvin Dowden, Jr. Doc. 32, att. 6, p. 9.

2016 the warehouse has been leased to Bayou Services, LLC, a moving and storage company managed by Charles "Vic" Vicknair. Doc. 27, att. 3, p. 13. Bayou Services is co-owned by Vicknair and the owners of Alpha, including Reese. Doc. 32, att. 6, pp. 13–14. The lease sets rent at $6,300 per month but Bayou Services had never actually paid that amount. Doc. 27, att. 2, pp. 54 & Exh. 2; doc. 27, att. 3, p. 109. Instead, Reese testified in Alpha's 30(b)(6) deposition, the members of Alpha "want to see Bayou as a . . . start-up business and have an opportunity to get its feet on the ground and try to get established and be profitable to the point he could start paying rent." Doc. 32, att. 6, p. 15. Vicknair also agreed that the $6,300 rent obligation had never been paid, testifying:

> It was my understanding with Mike that it was a start-up company, that it wasn't going to be—it wasn't going to be required to be paid up until the point . . . when he would decide it would be based on the stability of the company.

Doc. 32, att. 7, p. 55. But Bayou Services did not reach that point before the storm and had not reached it afterwards since it had not been able to repair the building. *Id.*; doc. 32, att. 6, pp. 15–16.

At the time Hurricane Laura and Hurricane Delta struck, the property was insured by a commercial property insurance policy issued by Ohio Security to Alpha and bearing policy number BKS 57187893. Doc. 27, att. 4, ¶ 4. That policy provides building coverage at a limit of $3,711,969 and business income and extra expense coverage at a limit of $77,934. *Id.* at 33. At the time the October 2021 tornado struck, the property was insured by a commercial property insurance policy issued by Ohio Security to Alpha and bearing

policy number BKS 57181878. *Id.* at ¶ 5. Both policies contain provisions voiding coverage on the basis of a material misrepresentation:

> J. The Concealment, Misrepresentation, Or Fraud Condition is replaced by the following:
>
> . . . .
>> 2. With respect to loss or damage caused by a peril other than fire and with respect to all insureds covered under this policy, we provide no coverage for loss or damage if, whether before or after a loss, one or more insureds have intentionally concealed or misrepresented any material fact or circumstance, with the intent to deceive, concerning:
>>    a.   This policy;
>>    b.   The Covered Property;
>>    c.   Your interest in the Covered Property; or
>>    d.   A claim under this policy.

*Id.* at 109.

Plaintiffs reported damage after Hurricane Laura and Ohio Security has made payments under both the building and business income/extra expense coverage.[2] Plaintiffs allege that some or more of these payments were inadequate and/or untimely. Doc. 1. Accordingly, they filed suit against Ohio Security in this court on April 14, 2021, raising claims of breach of insurance contract and bad faith. Ohio Security now moves for summary judgment, asserting that plaintiffs have voided their policy by claiming/accepting coverage for missing rental payments from Bayou Services while knowing that they had not incurred any such loss. Doc. 27. Plaintiffs oppose the motion. Doc. 32.

---

[2] Vicknair testified that extra expense payments had been made timely as the company submitted invoices and that the remaining extra expense coverage was paid after the tornado in October 2021. Doc. 27, att. 2, pp. 170–172.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
## LAW & APPLICATION

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that an insurance policy is a contract and that its provisions are construed using the general rules of contract interpretation in the Louisiana Civil Code. *Hanover Ins. Co. v. Superior Labor Svcs., Inc.*, 179 F.Supp.3d 656, 675 (E.D. La. 2016). "When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the courts must enforce the contract as written." *Sims v. Mulhearn Funeral Home, Inc.*, 956 So.2d 583, 589 (La. 2007) (citing La. Civ. Code art. 2046). Additionally, an insurer may avoid coverage on grounds of material misrepresentation only where the statements were made with intent to deceive. *Chavez v. Homesite Ins. Co.*, 834 F.Supp.2d 504, 507 (E.D. La. 2011) (citing *Cousin v. Page,* 372 So.2d 1231, 1233 (La. 1979)). Because there will rarely be direct evidence of intent, this element "must be determined from surrounding circumstances indicating the insured's knowledge of the falsity of the representations . . . and his recognition of the materiality of his misrepresentations, or from circumstances which create a reasonable assumption that the insured recognized the materiality." *Id.* at 508.

Relevant to this motion, Ohio Security adjuster Tara Clifford emailed Vicknair on August 30, 2020, to request documentation relating to plaintiffs' losses. Doc. 32, att. 3, p. 7. To that end she requested a copy of the lease agreement and stated that the field adjuster

would be in contact to schedule a site inspection. *Id.* Other email correspondence followed between Clifford, Vicknair, and Reese relating to Ohio Security's estimate of the damage to the building. *Id.* at 2–7. Clifford also sent follow-up requests for a copy of the lease to Vicknair on October 22 and November 4, 2020. *Id.* Reese responded on November 4:

> Good morning Tara. I am going to assist Vic. Are you referring to the lease between the building owner Alpha Development Group, LLC and Bayou Services, LLC?

*Id.* at 1.

Clifford answered:

> Yes, that is correct. I need the lease agreement to review the claim for loss of rental income if their rent is being abated during the period of restoration.

*Id.*

Reese replied, with a copy of the lease attached:

> Got it. Please find that lease agreement attached. Debra in my office will also be sending the invoices for portable offices that we are currently renting.

*Id.* On November 9, Clifford sent an email to Vicknair stating that Ohio Security had issued payment in the amount of $13,616.10 "for the loss of rental income" and $3,810.10 "for the additional office rental cost." Doc. 32, att. 5.

    Ohio Security maintains that plaintiffs' submission of the lease in this context amounts to a material representation—plaintiffs knew that rent was not being paid at the time of the storm but that the lease was nonetheless being requested so that they could be reimbursed for those payments under the terms of the policy. Plaintiffs assert, however, that "[i]t is undisputed" that rent is owed under the lease and that Alpha had the legal right to collect past due rent. Doc. 32, p. 7. They also maintain that, based on the above emails,

it was the determination of Ohio Security's adjuster "that the rent should be abated and over what time period the abatement should last." *Id.*

The only action from which a representation by the insured could be construed is Reese's submission of the lease in response to Clifford's November 4 email. Clifford's email indicated that her request was contingent on "if [Bayou Services's] rent is being abated during the period of restoration," allowing for the interpretation that Reese was making such a representation when he submitted the lease. However, the brief email also allows for the interpretation that such reimbursement will only be issued if the insurer itself makes that determination. There are no other representations by the insured on the record as to a loss of rental income claim. Moreover, given plaintiffs' interpretation that lease payments could be called due at any time, a claim for loss of rent is not necessarily outside the terms of the policy—particularly given the increase in demand for warehouse space after the storm. Accordingly, Ohio Security fails to show an intentional and material misrepresentation justifying avoidance of coverage.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 27] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 11th day of October, 2022.

JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE